FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

DEC 1 0 2010

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
___ DEPUTY

1        UNITED STATES DISTRICT COURT
2             DISTRICT OF NEVADA
                RENO, NEVADA
3

JOWEL LAGUERRE,                    )    3:10-CV-452-ECR-VPC
4                                  )
                                   )
5       Plaintiff,                 )
                                   )
6  vs.                             )         Order
                                   )
7  NEVADA SYSTEM OF HIGHER EDUCATION, )
   a State entity; MARIA SHEEHAN, an )
8  individual,                     )
                                   )
9       Defendants.                )
                                   )
10 _____)

11

12        Plaintiff in this case is Jowell Laguerre, the former Vice-

13 President of Academic Affairs at Truckee Meadows Community College

14 ("TMCC").  Defendants are Nevada System of Higher Education

15 ("NSHE"), Plaintiff's former employer, and Maria Sheehan

16 ("Sheehan"), an individual.

17        Now pending are Defendants' motion to dismiss (#6) and

18 Defendants' motion to dismiss Plaintiff's first amended complaint

19 (#8).[1] Plaintiff has opposed (#11) the motion to dismiss Plaintiff's

20 first amended complaint (#8), and Defendants replied (#13).  The

21 motions are ripe, and we now rule on them.

22

23              **I. Factual and Procedural Background**

24        Plaintiff was formerly employed by NSHE as Vice President of

25 Academic Affairs at TMCC.  In 2009, "all employees were offered a

26

27        [1] Defendants' motion to dismiss (#6) was never fully briefed
   because Plaintiff filed an amended complaint (#7), which rendered the
28 motion to dismiss (#6) moot.

1  severance package of one year's worth of pay plus vacation."  (Am.
2  Compl. ¶ 2 (#7).)  "Plaintiff was eligible and accepted."  (Id.)
3  Plaintiff alleges that, as a result, a contract between himself and
4  TMCC was formed.  The alleged contract "contained no prohibition
5  against accepting future employment" and "Plaintiff obtained future
6  employment."  (Id. ¶ 3.)  Because Plaintiff obtained future
7  employment "Defendant failed and refused to comply with its
8  obligation to fund the severance as agreed." (Id.)  "In addressing
9  this dispute regarding the breach of contract, Plaintiff and General
10 Counsel for TMCC, representing that he had full authority of the
11 president of TMCC, reached a compromise, a new contract or a
12 novation, for the sum of $65,000.  This formed a second contract."
13 (Id. ¶ 4.)  Subsequently, TMCC "required Plaintiff to leave early in
14 order to receive the benefit of the contract.  Plaintiff complained.
15 Defendant then refused to perform under the second contract . . . ."
16 (Id. ¶ 5.)  Plaintiff "attempted to grieve these breaches to the
17 Chancellor who deferred to the TMCC President."  (Id. ¶ 7.)

18      Plaintiff also alleges that NSHE denied him emeritus status
19 after nearly seven years of employment, and that others similarly
20 situated who are not "African American, foreign born and black" did
21 receive emeritus. (Id. ¶ 8.)  In addition, Plaintiff alleges that
22 "another similarly situated to Plaintiff who was not African-
23 American, foreign-born and black received severance despite having
24 future employment and others who obtained settlements were not
25 required to leave early."  (Id. ¶ 9.)

26      On June 23, 2010, Plaintiff filed a complaint in state court.
27 On July 21, 2010, Defendants removed (#1) the action to federal
28 court, invoking our federal question jurisdiction.  On August 16,

1  2010, Defendants filed a motion to dismiss (#6).  On August 17,
2  2010, Plaintiff filed an amended complaint (#7).  On September 3,
3  2010, Defendants filed a motion to dismiss (#8) the amended
4  complaint.  Plaintiff opposed the motion and Defendants replied.
5
6                    **II. Motion to Dismiss Standard**
7       A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be
8  granted if the complaint fails to "state a claim to relief that is
9  plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
10  570 (2007).  On a motion to dismiss, "we presum[e] that general
11  allegations embrace those specific facts that are necessary to
12  support the claim."  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555,
13  561 (1992) (quoting <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 889
14  (1990)) (alteration in original).  Moreover, "[a]ll allegations of
15  material fact in the complaint are taken as true and construed in
16  the light most favorable to the non-moving party."  <u>In re Stac</u>
17  <u>Elecs. Sec. Litig.</u>, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation
18  omitted).
19       Although courts generally assume the facts alleged are true,
20  courts do not "assume the truth of legal conclusions merely because
21  they are cast in the form of factual allegations."  <u>W. Mining</u>
22  <u>Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,
23  "[c]onclusory allegations and unwarranted inferences are
24  insufficient to defeat a motion to dismiss."  <u>In re Stac Elecs.</u>, 89
25  F.3d at 1403 (citation omitted).
26       Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is
27  normally limited to the complaint itself.  <u>See Lee v. City of L.A.</u>,
28  250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on

1 materials outside the pleadings in making its ruling, it must treat
2 the motion to dismiss as one for summary judgment and give the non-
3 moving party an opportunity to respond. FED. R. CIV. P. 12(d);
4 see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A
5 court may, however, consider certain materials — documents attached
6 to the complaint, documents incorporated by reference in the
7 complaint, or matters of judicial notice — without converting the
8 motion to dismiss into a motion for summary judgment."  Ritchie, 342
9 F.3d at 908.

10     If documents are physically attached to the complaint, then a
11 court may consider them if their "authenticity is not contested" and
12 "the plaintiff's complaint necessarily relies on them."  Lee, 250
13 F.3d at 688 (citation, internal quotations, and ellipsis omitted).
14 A court may also treat certain documents as incorporated by
15 reference into the plaintiff's complaint if the complaint "refers
16 extensively to the document or the document forms the basis of the
17 plaintiff's claim."  Ritchie, 342 F.3d at 908.  Finally, if
18 adjudicative facts or matters of public record meet the requirements
19 of Fed. R. Evid. 201, a court may judicially notice them in deciding
20 a motion to dismiss.  Id. at 909; see Fed. R. Evid. 201(b) ("A
21 judicially noticed fact must be one not subject to reasonable
22 dispute in that it is either (1) generally known within the
23 territorial jurisdiction of the trial court or (2) capable of
24 accurate and ready determination by resort to sources whose accuracy
25 cannot reasonably be questioned.").

26

27 ### III. Analysis

28     Plaintiff asserts five claims for relief.  Defendants challenge

1  each one.  We will examine each claim in turn.

2      A. Breach of Contract: First Contract

3      Plaintiff's first claim alleges that NSHE breached a contract
4  between himself and NSHE regarding severance.  Defendants contend
5  that Plaintiff has not pled facts in support of the first element of
6  a breach of contract claim — the existence of a valid contract.
7  Defendants argue that the offer at issue in this case, which
8  Plaintiff alleges was extended to "all employees," (Am. Compl. ¶ 2
9  (7)), is merely information distributed by NSHE regarding a so-
10 called buyout program.  Defendants attach the information — a
11 memorandum sent via e-mail to all classified academic and
12 administrative faculty regarding a buy out program ("the
13 Memorandum") and a document entitled Buyout Questions and Answers
14 ("Q&A") distributed to the same list via e-mail (collectively, "the
15 Information") — to their motion to dismiss and requests that we
16 consider the documents in deciding the pending motion.  Defendants
17 contend that the Information does not constitute an "offer" within
18 the meaning of the law and thus Plaintiff does not state a claim.

19     Plaintiff does not take issue with Defendants' characterization
20 of the Information as the offer at issue nor does he object to our
21 consideration of the Memorandum and Q&A with respect to deciding
22 this motion.[2]  He nonetheless contends that he states a claim for

23

24     [2] Because the Memorandum and Q&A apparently form the basis of
   Plaintiff's complaint, we will consider them.  See Ritchie, 342 F.3d
25 at 908.  Defendants also request that we consider Plaintiff's
   employment contract in deciding this motion.  We decline, however, to
26 consider Plaintiff's employment contract and will not address
   Defendants' arguments based on its terms.  The employment contract
27 does not form the basis of Plaintiff's complaint.  Defendants provide
   no authority that would militate in favor of its admissibility at this
28 stage in the litigation.

1 breach of contract.

2    To succeed on a breach of contract claim, a plaintiff must show
3 four elements: (1) formation of a valid contract; (2) performance or
4 excuse of performance by the plaintiff; (3) material breach by the
5 defendant; and (4) damages.  See Bernard v. Rockhill Dev. Co., 734
6 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be
7 a material failure of performance of a duty arising under or imposed
8 by agreement") (quoting Malone v. Univ. of Kan. Med. Ctr., 552 P.2d
9 885, 888 (Kan. 1976)).

10    "Basic contract principles require, for an enforceable
11 contract, an offer and acceptance, meeting of the minds, and
12 consideration."  May v. Anderson, 119 P.3d 1254, 1256 (Nev. 2005).
13 With respect to contract formation, "preliminary negotiations do not
14 constitute a binding contract unless the parties have agreed to all
15 material terms."  Id.  "[T]o enforce a contract at law, the offer
16 must be sufficiently definite or must call for such definite terms
17 in the acceptance, that the performance required is reasonably
18 certain."  Spellman v. Dixon, 63 Cal. Rptr. 668, 670 (Cal. App.
19 1967).  In order to be sufficiently definite, the parties must have
20 agreed to all material terms of a contract.  Chung v. Atwell, 745
21 P.2d 370, 371 (Nev. 1987).  "In determining whether a contract or
22 its terms are definite, an important consideration is whether the
23 court can determine [the putative contract's] exact meaning and fix
24 the legal liability of the parties."  Id. (internal quotation marks
25 omitted) (alteration in original).

26    In this case, the offer at issue — the Memorandum and Q&A —
27 pertains to a voluntary program intended to reduce "the adverse
28 impact of budget reductions."  (The Memorandum at 1 (#8-1).)  The

1  Memorandum explains that in light of budget reductions, certain
2  professional employees and classified staff are eligible to apply
3  for participation in a so-called buyout program.  (Id. at 2.)  The
4  Memorandum further indicates that those who apply and are chosen to
5  participate in the buyout program will receive one year's salary,
6  $7,500 and any annual leave accrual in exchange for their retirement
7  and resignation.  (Id.)  The Memorandum explicitly states that
8  "participation is subject to the approval of the appropriate Vice
9  President or President, and the Cabinet on April 6, 2009 and that
10 "funds may be approved for buy outs on a first come first served
11 basis . . . ."  (Id. at 1.)  The Q&A elaborates on the criteria for
12 the buyout program and emphasizes that not all applicants to the
13 program will be approved.  Specifically, the Q&A informs e-mail
14 recipients that those employees who request buyouts will be informed
15 if they've been approved by the end of April 2009.  (Q&A at 1 (#8-
16 1).)  Neither the Memorandum nor the Q&A — considered separately or
17 in conjunction — constitutes an "offer."  Neither document is
18 definite and neither call for definite terms in the acceptance.
19 Spellman, 63 Cal. Rptr. at 670.  The Memorandum and Q&A merely
20 furnish information to potential participants in the buyout program
21 regarding the buyout program itself and the application procedures
22 and criteria for participation.  Plaintiff does not allege that he
23 was approved for participation in the buyout program or that a
24 definite offer was presented to him.  Plaintiff may have interpreted
25 the Information as an offer but contracts cannot be created by
26 subjective expectations.  See Vancheri v. GNLV Corp., 777 P.2d 366,
27 369 (Nev. 1989).  Plaintiff's first claim thus fails and will be
28 dismissed.

1      B. Breach of Contract: Second Contract

2      Plaintiff's second claim alleges breach of the second contract
3  or novation.  Plaintiff's allegations with respect to the existence
4  second contract are as follows: "In addressing this dispute
5  regarding the breach of contract, Plaintiff and General Counsel for
6  TMCC, representing that he had full authority of the president of
7  TMCC, reached a compromise, a new contract or a novation, for the
8  sum of $65,000.  This formed a second contract."  (Id. ¶ 4.)
9  Plaintiff's allegations are insufficient to support the existence of
10 a contract.  Specifically, Plaintiff merely asserts the existence of
11 a contract involving $65,000 without alleging facts that would
12 permit an inference of contract formation.  Plaintiff's second claim
13 will therefore be dismissed.

14     C. Breach of the Covenant of Good Faith and Fair Dealing

15     Plaintiff's third claim requests tort damages for breach of the
16 covenant of implied faith and fair dealing.  An implied covenant of
17 good faith and fair dealing is recognized in every contract under
18 Nevada law.  Consol. Generator-Nevada, Inc. v. Cummins Engine Co.,
19 Inc., 971 P.2d 1251, 1256 (Nev. 1998).  To plead this tort, the
20 plaintiff must allege: (1) plaintiff and defendant were parties to
21 the agreement; (2) the defendant owed a duty of good faith to the
22 plaintiff; (3) the defendant breached that duty by performing in a
23 manner that was unfaithful to the purpose of the contract; and (4)
24 the plaintiff's justified expectations were denied.  Perry v.
25 Jordan, 900 P.2d 335, 337 (Nev. 1995).  Plaintiff alleges no facts
26 indicating that NSHE performed any contract in a manner that was
27 unfaithful to that contract's purpose; Plaintiff's third claim will
28 be dismissed on that basis.

1    D. 42 U.S.C. § 1981

2        Plaintiff's fourth claim alleges a violation of 42 U.S.C. §
3    1981.  As the Supreme Court explains, 42 U.S.C. § 1981 "protects the
4    equal right of 'all persons within the jurisdiction of the United
5    States' to 'make and enforce contracts' without respect to race."
6    Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474-75 (2006).  The
7    phrase "make and enforce contracts" includes "the making,
8    performance, modification, and termination of contracts, and the
9    enjoyment of all benefits, privileges, terms, and conditions of the
10   contractual relationship."  42 U.S.C. § 1981(b).  To succeed on a
11   section 1981 claim, a "contractual relationship need not already
12   exist, because § 1981 protects the would-be contractor along with
13   those who already have made contracts."  Domino's Pizza, Inc., 546
14   U.S. 470 at 476.

15       Plaintiff's claim for discrimination appears to be based on two
16   allegations: (1) "Defendant denied Plaintiff's emeritus status after
17   nearly seven years of employment.  Others similarly situated who
18   were not African-American foreign-born and black did receive
19   emeritus.  This combined with the other adverse actions constitutes
20   an adverse employment action." (Am. Compl. ¶ 8 (#7)) and (2)
21   "Another similarly situated to Plaintiff who was not African-
22   American, foreign-born and black received severance despite having
23   future employment and others who obtained settlements were not
24   required to leave early."  (Id. ¶ 9 (#7).)

25       Plaintiff's allegations are sufficient to state a section 1981
26   claim.  Although Plaintiff does not allege facts sufficient to
27   permit the inference that a contract existed between himself and
28   NSHE, the existence of a contract is not required to state a claim

1  under section 1981.   See Domino's Pizza, Inc., 546 U.S. at 476.
2  Plaintiff identifies two potential contractual relationships and
3  alleges that he was denied the benefits of these contracts because
4  of his race.[3]   That is sufficient to state a claim under section
5  1981.   Plaintiff's fourth claim thus survives this motion to
6  dismiss.

7      E.  First Amendment

8      Plaintiff's fifth claim alleges a violation of his First
9  Amendment rights.[4]   This claim appears to only apply to Sheehan.
10 Specifically, Plaintiff alleges that "Defendant Sheehan punished
11 Plaintiff for complaining about official misconduct by ratifying the
12 foregoing breaches."[5]   (Am. Compl.

13     The First Amendment prohibits state retaliation against a
14 public employee for speech made as a citizen on a matter of public
15 concern.   Connick v. Myers, 461 U.S. 138, 147 (1983).   Analysis of a
16 First Amendment retaliation claim against a government employer

17

18     [3] The allegations do not specify whether emeritus status involves
19 a contractual relationship.   Nevertheless, for the purposes of a
   motion to dismiss, Plaintiff's claim passes muster.

20     [4] Defendants urge us to conclude that Plaintiff does not state
21 a claim under the Fifth Amendment for the conduct underlying his fifth
   claim for relief.   Plaintiff, in his opposition, asserts that "there
22 is no such claim in the first amended complaint."   (P.'s Opp. at 3
   (#11).)

23     [5] The theory of ratification is available in section 1983
24 lawsuits to hold a municipality liable for a constitutional violation
   when an authorized policymaker approves a subordinate's decision and
25 the basis for it.   Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004).
   Plaintiff appears to graft the theory onto a First Amendment
26 retaliation claim.   This order is not intended to comment on the
   viability of such a theory in the First Amendment context.   Defendants
27 challenge Plaintiff's claim only on the basis that Plaintiff's speech
   is unprotected, not on the causal connection between the speech and
28 the adverse employment actions at issue.   Thus, we do not reach the
   issue of ratification.

1  involves a sequential five-step series of questions: (1) whether the
2  plaintiff spoke on a matter of public concern; (2) whether the
3  plaintiff spoke as a private citizen or public employee; (3) whether
4  the plaintiff's protected speech was a substantial or motivating
5  factor in the adverse employment action; (4) whether the state had
6  an adequate justification for treating the employee differently from
7  other members of the general public; and (5) whether the state would
8  have taken the adverse employment action even absent the protected
9  speech.  <u>Derochers v. City of San Bernardino</u>, 572 F.3d 703, 708-709
10 (9th Cir. 2009).

11      Defendants challenge Plaintiff's fifth claim only on the basis
12 that the speech at issue is not protected under the First Amendment.
13 The speech at issue appears to be as follows: "Plaintiff attempted
14 to grieve these breaches [of contract] to the Chancellor who
15 deferred to he TMCC President."   (Am. Compl. ¶ 7 (#7).)   Plaintiff
16 re-frames the speech in more general terms later in the complaint,
17 suggesting Plaintiff may have grieved TMCC's actions with respect to
18 other employees as well as himself: "Plaintiff pointed out the
19 refusals of public officials in a public agency to follow through on
20 their agreements with employees."   (<u>Id.</u> ¶ 31.)

21      "Speech that deals with individual personnel disputes and
22 grievances and that would be of no relevance to the public's
23 evaluation of the performance of governmental agencies" <u>Coszalter</u>
24 <u>v. City of Salem</u>, 320 F.3d 968, 973 (9th Cir. 2003)(internal
25 quotation marks and citation omitted).   Nevertheless, Plaintiff's
26 allegations regarding the relevant speech are too vague for us to
27 determine whether Plaintiff's speech falls with in <u>Coszalter's</u>
28 proscription or was on a matter of public concern.   Plaintiff does

1  not allege precisely what he said nor does Plaintiff allege facts

2  regarding the context of the alleged speech.   It would be premature

3  to conclude, as Defendants urge, that Plaintiff's speech was

4  unprotected as a matter of law.   <u>See</u> <u>Henkle v. Gregory</u>, 150 F. Supp.

5  2d 1067, 1075 (D. Nev. 2001)(declining to dismiss First Amendment

6  claim at the motion to dismiss stage).   Plaintiff's fifth claim thus

7  survives the present motion to dismiss.

8

9                     **IV. Leave to Amend**

10      Under Rule 15(a) leave to amend is to be "freely given when

11  justice so requires."   In general, amendment should be allowed with

12  "extreme liberality."   <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244

13  F.3d 708, 712 (9th Cir. 2001) (quoting <u>Morongo Band of Mission</u>

14  <u>Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990)).   If factors

15  such as undue delay, bad faith, dilatory motive, undue prejudice or

16  futility of amendment are present, leave to amend may properly be

17  denied in the district court's discretion.   <u>Eminence Capital, LLC v.</u>

18  <u>Aspeon, Inc.</u>, 316 F.3d 1048, 1051-52 (9th Cir. 2003).

19      In light of the liberal spirit of Rule 15(a), we will give

20  Plaintiff leave to amend.   If the amended complaint is similarly

21  deficient however, further leave to amend may be denied.   If

22  Plaintiff chooses not to amend the complaint, this case will proceed

23  with respect to Plaintiff's fourth and fifth claims.

24

25

26                     **V. Conclusion**

27      Plaintiff's first and second claims for breach of contract do

28  not survive the present motion to dismiss because Plaintiff does not

1 | allege facts sufficient to permit the inference that a contract
2 | existed.  Plaintiff's third claim for the breach of the implied
3 | covenant of good faith and fair dealing fails because Plaintiff
4 | alleges no facts indicating that NSHE performed any contract in a
5 | manner that was unfaithful to that contract's purpose.  Plaintiff's
6 | fourth claim alleging a violation of 42 U.S.C. § 1981 survives the
7 | present motion to dismiss because Plaintiff identifies two potential
8 | contractual relationships and alleges that he was denied the
9 | benefits of these contracts because of his race.  Plaintiff's fifth
10 | claim alleging First Amendment retaliation likewise survives the
11 | present motion to dismiss because it would be premature to conclude
12 | at this stage that the speech at issue is not of public concern.
13 | Plaintiff will be given leave to amend his complaint.

19 | **IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' motion to
20 | dismiss (#6) is **DENIED** as moot.

22 | **IT IS FURTHER HEREBY ORDERED THAT** Defendants' motion to dismiss
23 | (#8) is **GRANTED** in part and **DENIED** in part on the following basis:
24 | Plaintiff's first, second and third claims are dismissed.
25 | Plaintiff's fourth and fifth claims survive this motion to dismiss.
26 | Plaintiff shall have twenty-one (21) days within which to file an
27 | amended complaint.  If Plaintiff chooses not to file an amended
28 | complaint this case will proceed with respect to the claims not

1   dismissed by this order.

2

3   DATED: December 9, 2010.

4                                               *Edward C. Reed.*

5                                       UNITED STATES DISTRICT JUDGE