**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| JOWEL LAGUERRE, ) | 3:10-CV-452-ECR-VPC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Order** |
| ) | |
| NEVADA SYSTEM OF HIGHER EDUCATION, ) | |
| a State entity; MARIA SHEEHAN, an ) | |
| individual, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

     Plaintiff in this case is Jowell Laguerre, the former Vice-President of Academic Affairs at Truckee Meadows Community College ("TMCC").  Defendants are Nevada System of Higher Education ("NSHE"), Plaintiff's former employer, and Maria Sheehan ("Sheehan"), an individual.

     Now pending is Defendants' motion (#18) to dismiss Plaintiff's second amended complaint (#17). Plaintiff has opposed (#19) and Defendants have replied (#21).  The motion is ripe, and we now rule on it.

### I. Factual and Procedural Background

     Plaintiff was formerly employed by NSHE as Vice President of Academic Affairs at TMCC.  Plaintiff is "African-American, foreign-born and black." (Sec. Am. Compl. ¶ 9 (#17).)  In 2009, "all employees were offered a severance package of one year's worth of pay plus vacation." (Id. ¶ 2)  "Plaintiff was eligible and

1

1  accepted." (<u>Id.</u>)  Plaintiff alleges that, as a result, a contract
2  between himself and TMCC was formed.  The alleged contract
3  "contained no prohibition against accepting future employment" and
4  "Plaintiff obtained future employment." (<u>Id.</u>)  In addressing this
5  dispute, the General Counsel for TMCC, representing that he had full
6  authority of the president of TMCC, offered Plaintiff the sum of
7  $65,000 in lieu of a severance package, which Plaintiff claims
8  formed a contract. (<u>Id.</u> ¶ 3)  Subsequently, TMCC "required Plaintiff
9  to leave early in order to receive the benefit of the contract.
10 Plaintiff complained.  Defendant refused to perform under the
11 contract . . . ."  (<u>Id.</u> ¶ 4.)  Plaintiff "attempted to grieve these
12 breaches to the Chancellor, who deferred to the TMCC President."
13 (<u>Id.</u> ¶ 6.)

14      Plaintiff also alleges that NSHE denied him emeritus status
15 after nearly seven years of employment, and that others similarly
16 situated who are not "African American, foreign born and black" did
17 receive emeritus. (<u>Id.</u> ¶ 7.)  In addition, Plaintiff alleges that
18 "another similarly situated to Plaintiff who was not African-
19 American, foreign-born and black received severance despite having
20 future employment and others who obtained settlements were not
21 required to leave early."  (<u>Id.</u> ¶ 8.)

22      On June 23, 2010, Plaintiff filed a complaint in state court.
23 On July 21, 2010, Defendants removed (#1) the action to federal
24 court, invoking our federal question jurisdiction.  On August 16,
25 2010, Defendants filed a motion to dismiss (#6).  On August 17,
26 2010, Plaintiff filed an amended complaint (#7).  On September 3,
27 2010, Defendants filed a motion to dismiss (#8) the amended

28                                    2

complaint.  Plaintiff opposed the motion and Defendants replied.  On December 10, 2010, this Court issued an order (#16) denying Defendants' motion (#6) to dismiss the complaint as moot and granting in part and denying in part Defendants' motion (#8) to dismiss Plaintiff's amended complaint (#7).  On December 28, 2010, Plaintiff filed a second amended complaint (#17).  On January 13, 2011, Defendants filed a motion (#18) to dismiss the second amended complaint.  Plaintiff opposed (#19) and Defendants replied (#21). The motion is ripe, and we now rule on it.

## II. Motion to Dismiss Standard

Courts engage in a two-step analysis in ruling on a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  First, courts accept only non-conclusory allegations as true. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.  Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.  The Court must draw all reasonable inferences in favor of the plaintiff. See Mohamed v. Jeppesen Dataplan, Inc., 579 F.3d 943, 949 (9th Cir. 2009).

After accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint "states a plausible

3

1  claim for relief." Iqbal, 129 S. Ct. at 1949. (citing Twombly, 550
2  U.S. at 555).  "A claim has facial plausibility when the plaintiff
3  pleads factual content that allows the court to draw the reasonable
4  inference that the defendant is liable for the misconduct alleged."
5  Id. at 1949 (citing Twombly, 550 U.S. at 556).  This plausibility
6  standard "is not akin to a 'probability requirement,' but it asks
7  for more than a sheer possibility that a defendant has acted
8  unlawfully." Id.  A complaint that "pleads facts that are 'merely
9  consistent with' a defendant's liability...' stops short of the line
10  between possibility and plausibility of 'entitlement to relief.'"
11  Id. (citing Twombly, 550 U.S. at 557).

12      Review on a motion pursuant to Federal Rule of Civil Procedure
13  12(b)(6) is normally limited to the complaint itself.  See Lee v.
14  City of L.A., 250 F.3d 668, 688 (9th Cir. 2001).  If the district
15  court relies on materials outside the pleadings in making its
16  ruling, it must treat the motion to dismiss as one for summary
17  judgment and give the non-moving party an opportunity to respond.
18  FED. R. CIV. P. 12(d); see United States v. Ritchie, 342 F.3d 903,
19  907 (9th Cir. 2003).  "A court may, however, consider certain
20  materials — documents attached to the complaint, documents
21  incorporated by reference in the complaint, or matters of judicial
22  notice — without converting the motion to dismiss into a motion for
23  summary judgment."  Ritchie, 342 F.3d at 908.

24      If documents are physically attached to the complaint, then a
25  court may consider them if their "authenticity is not contested" and
26  "the plaintiff's complaint necessarily relies on them."  Lee, 250
27  F.3d at 688 (citation, internal quotations, and ellipsis omitted).

28                                    4

A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." Ritchie, 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss. Id. at 909; see Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### **III. Analysis**

Plaintiff's second amended complaint (#17) asserts four claims for relief. Defendants challenge Plaintiff's first, second and fourth claims for relief. Defendants also claim that Plaintiff's second amended complaint (#17) should be dismissed because Plaintiff has failed to pay Defendants' costs in a prior state court action. (Sec. Am. Compl. at 15 (#18).) We will examine each claim in turn.

A. First Cause of Action: Breach of Contract

To succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages. See Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed

5

1  by agreement.") (quoting <u>Malone v. Univ. of Kan. Med. Ctr.</u>, 552 P.2d

2  885, 888 (Kan. 1976)).

3      "Basic contract principles require, for an enforceable

4  contract, an offer and acceptance, meeting of the minds, and

5  consideration." <u>May v. Anderson</u>, 119 P.3d 1254, 1256 (Nev. 2005).

6  With respect to contract formation, "preliminary negotiations do not

7  constitute a binding contract unless the parties have agreed to all

8  material terms." <u>Id.</u> "[T]o enforce a contract at law, the offer

9  must be sufficiently definite or must call for such definite terms

10 in the acceptance, that the performance required is reasonably

11 certain." <u>Spellman v. Dixon</u>, 63 Cal. Rptr. 668, 670 (Cal. App.

12 1967). In order to be sufficiently definite, the parties must have

13 agreed to all material terms of a contract. <u>Chung v. Atwell</u>, 745

14 P.2d 370, 371 (Nev. 1987). "In determining whether a contract or

15 its terms are definite, an important consideration is whether the

16 court can determine [the putative contract's] exact meaning and fix

17 the legal liability of the parties." <u>Id.</u> (internal quotation marks

18 omitted) (alteration in original)

19     Plaintiff alleges that NSHE breached a contract between himself

20 and NSHE regarding severance with respect to the payment of $65,000.

21 Defendants contend that the alleged verbal agreement with respect to

22 the payment of $65,000 is not a contract because the Nevada System

23 of Higher Education Code (the "NSHE Code") requires that all

24 employment contracts be in writing. (MTD at 3 (#18).)

25     In our order (#16) dated December 10, 2010, we found that

26 Plaintiff's allegations with respect to the alleged contract for

27 payment of $65,000 in lieu of a severance package are insufficient

28                                    6

1  to support the existence of a contract.  As in his first amended
2  complaint (#7), Plaintiff merely asserts the existence of a contract
3  involving $65,000 without alleging facts that would permit an
4  inference of contract formation.  Plaintiff's first cause of action
5  for breach of contract will therefore be dismissed.

6            B. Second Cause of Action: Breach of the Covenant of Good
7  Faith and Fair Dealing

8       Plaintiff's second claim requests tort damages for breach of
9  the implied covenant of good faith and fair dealing.  An implied
10  covenant of good faith and fair dealing is recognized in every
11  contract under Nevada law.  Consol. Generator-Nevada, Inc. v.
12  Cummins Engine Co., Inc., 971 P.2d 1251, 1256 (Nev. 1998).  To plead
13  this tort, the plaintiff must allege that: (i) the plaintiff and the
14  defendant were parties to the agreement; (ii) the defendant owed a
15  duty of good faith to the plaintiff; (iii) the defendant breached
16  that duty by performing in a manner that was unfaithful to the
17  purpose of the contract; and (iv) the plaintiff's justified
18  expectations were denied.  Perry v. Jordan, 900 P.2d 335, 337 (Nev.
19  1995).

20       In our order (#16) dated December 10, 2010, we found that
21  Plaintiff had not shown that NSHE performed a contract in a manner
22  that was unfaithful to the contract's purposes.  Plaintiff alleges
23  no new facts in his second amended complaint (#17) indicating that
24  NSHE performed any contract in a manner that was unfaithful to that
25  contract's purpose.  Plaintiff's second claim will therefore be
26  dismissed on that basis.

27  ///

28                                    7

D. Fourth Cause of Action: First Amendment

Plaintiff's fourth claim alleges a violation of his First Amendment rights.  This claim appears to only apply to Defendant Sheehan.  Specifically, Plaintiff alleges that "Defendant Sheehan punished Plaintiff for complaining about official misconduct by ratifying the foregoing breaches."  (Sec. Am. Compl. ¶ 25 (#17).) Plaintiff also suggests that he may have grieved TMCC's actions with respect to other employees as well as himself: "Plaintiff pointed out the refusals of public officials in a public agency to follow through on their agreements with employees." (Id.)

The First Amendment prohibits state retaliation against a public employee for speech made as a citizen on a matter of public concern.  Connick v. Myers, 461 U.S. 138, 147 (1983).  Analysis of a First Amendment retaliation claim against a government employer involves a sequential five-step series of questions: (i) whether the plaintiff spoke on a matter of public concern; (ii) whether the plaintiff spoke as a private citizen or public employee; (iii) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (iv) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (v) whether the state would have taken the adverse employment action even absent the protected speech.  Derochers v. City of San Bernardino, 572 F.3d 703, 708-709 (9th Cir. 2009).

Defendants challenge Plaintiff's fourth claim on the bases that the speech at issue (i) occurred after the adverse employment action was taken; (ii) was not protected by the First Amendment because

8

1  Plaintiff was a policymaker or confidential employee; or (iii) that
2  Defendant Sheehan should be granted qualified immunity with respect
3  to Plaintiff's First Amendment claim. (Sec. Am. Compl. at 9-10
4  (#18).)

5              i. Timing of the Adverse Employment Action

6       Defendants claim, first, that protected speech spoken after the
7  adverse employment action cannot be a substantial or motivating
8  factor in the decision to take the employment action. Brown v.
9  State, 679 F. Supp. 2d 1188, 1198 (D. Ha. 2009); Eiden v. McCarthy,
10 531 F. Supp. 2d 333, 352 (D. Conn. 2008).  Plaintiff alleges that
11 (i) the contract to pay Plaintiff $65,000 was breached; (ii)
12 Plaintiff complained; and (iii) thereafter, Defendant Sheehan had
13 the opportunity to comply with the $65,000 contract, but instead
14 ratified the breach. (Resp. to MTD at 3 (#19).)  The theory of
15 ratification is available in section 1983 lawsuits to hold a
16 municipality liable for a constitutional violation when an
17 authorized policymaker approves a subordinate's decision and the
18 basis for it.  Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004).
19 The Ninth Circuit Court of Appeals has recognized that the theory of
20 ratification may be utilized in alleging a First Amendment claim.
21 See, e.g., Larez v. Los Angeles, 946 F.2d 630 (9th Cir. 1991).
22 Viewing the facts in the light most favorable to Plaintiff, we find
23 that Plaintiff has stated a plausible claim for relief for
24 retaliation based on a theory of ratification under the First
25 Amendment with respect to the timing of Plaintiff's claim.
26 ///
27 ///
28                                    9

1          ii. Plaintiff's Status as a Policymaker or
2 Confidential Employee

3      Defendants alternatively challenge Plaintiff's First Amendment
4 claim by alleging that in his role as Vice President for Academic
5 Affairs, Plaintiff was a policymaker or confidential employee who is
6 not entitled to First Amendment protection. (MTD at 10 (#18).)

7      The fourth element of a First Amendment claim is whether the
8 state had an adequate justification for treating the employee
9 differently from other members of the general public.  Additionally,
10 a threshold inquiry in a claim for First Amendment retaliation is
11 whether the employee was a policymaking or confidential employee.
12 In Walker v. City of Lakewood, the Ninth Circuit held that "an
13 employee's status as a policymaking or confidential employee [is]
14 dispositive of any First Amendment retaliation claim." 272 F.3d
15 1114, 1131 (quoting Biggs v. Best, Best, & Krieger, 189 F.3d 989,
16 994-95 (9th Cir. 1999)).  Whether an employee is a policymaking or
17 confidential employee is a mixed question of law and fact. Id.  This
18 is because "determining the particular duties of a position is a
19 factual question, while determining whether those duties ultimately
20 make that position a policymaking or confidential question is a
21 question of law." Hobler v. Brueher, 325 F.3d 1145, 1150 (9th Cir.
22 2003) (citing Walker, 272 F.3d at 1131).

23      The question of whether the policymaker exception applies "is
24 properly determined by summary judgment or occasionally a motion to
25 dismiss rather than a trial, at least where the duties of the
26 position, insofar as they are material, are not genuinely at issue."
27 Id. at 1150-51. In fact, where the material duties of a position are

28                                    10

1  not at issue, "the question of 'whether these duties ultimately make
2  that position a policymaking or confidential [position] cannot
3  properly be submitted to a jury because it is a question of law.'"
4  Id. (citing Walker, 272 F.3d at 1132)).

5      Here, the material duties of the Vice President of Academic
6  Affairs position are at issue.  The pleadings do not contain any
7  description of the duties and responsibilities of the Vice President
8  of Academic Affairs.  As such, we are unable to determine at this
9  stage whether Plaintiff was a policymaker or confidential employee
10 who would not be entitled to First Amendment protection.  Viewing
11 the facts in the light most favorable to Plaintiff, we find that
12 Plaintiff has stated a plausible claim for relief for retaliation
13 based on a theory of ratification under the First Amendment with
14 respect to Plaintiff's employee status.

15                  iii. Qualified Immunity

16      Finally, Defendants argue that Plaintiff's fourth claim should
17 be dismissed because Defendant Sheehan should be granted qualified
18 immunity.  Qualified immunity shields government officials from
19 liability for the violation of an individual's federal
20 constitutional rights.  This grant of immunity is available to state
21 or federal employees performing discretionary functions where their
22 actions, even if later found to be unlawful, did not violate clearly
23 established law. Harlow v. Fitzgerald, 457 U.S. 800 (1982).
24 Qualified immunity is immunity from suit, not merely from liability.
25 Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Qualified immunity
26 protects "all but the plainly incompetent or those who knowingly
27 violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

28                              11

1    With respect to a qualified immunity claim, the plaintiff has
2  the burden of establishing that the right claimed was clearly
3  established. <u>Baker v. Racansky</u>, 887 F.2d 183, 186 (9th Cir. 1989).
4  This District has found that "[f]or a constitutional right to be
5  'clearly established,' its contours must be sufficiently clear that
6  a reasonable official would understand that what he is doing
7  violates that right at the time of his conduct.  In other words, in
8  light of pre-existing law the unlawfulness must be apparent." <u>Refai</u>
9  <u>v. Lazaro</u>, 614 F. Supp. 2d 1103 (D. Nev. 2009)(internal citations
10  omitted).  Plaintiff has not cited any cases establishing a clear
11  rule that a vice president of a college has a First Amendment right
12  to criticize his college's president.  Rather, the Ninth Circuit
13  Court of Appeals has found that "[i]t is far from clearly
14  established today . . . that university professors have a First
15  Amendment right to comment on faculty administrative matters without
16  retaliation." <u>Hong v. Grant</u>, 2010 U.S. App. LEXIS 23504 (9th Cir.
17  Nov. 10, 2010).  We therefore find that Defendant Sheehan is
18  entitled to qualified immunity.

19    Even though Defendant Sheehan is entitled to qualified
20  immunity, we pause to address an issue the parties neglected.  Put
21  simply, Defendant Sheehan can only claim qualified immunity in an
22  action for damages; qualified immunity does not bar injunctive
23  relief. Am. Fire, Theft & Collision Managers, Inc. v. Gillespie, 932
24  F.2d 816, 818 (9th Cir. 1991) (quoting Presbyterian Church (U.S.A.)
25  v. United States, 870 F.2d 518, 527 (9th Cir. 1989) ("Qualified
26  immunity is an affirmative defense to damage liability; it does not
27  bar actions for declaratory or injunctive relief.")).

28                              12

1    In American Fire, the Ninth Circuit concluded that none of the

2 reasons for supporting qualified immunity applied in an action

3 seeking only declaratory or injunctive relief.  First, the court

4 determined that the potential for an injunction would not likely

5 deter an official from exercising his duties. Id.  Second, the court

6 doubted that anyone would shy away from public office on the chance

7 that he would be subject to an injunction that limited the exercise

8 of his authority. Id.  Finally, the court recognized that an action

9 for an injunction is against the government and not the individual

10 defendant; in general, the government provides the legal

11 representation and puts up the defense. Id.

12    Defendants' motion (#18) to dismiss will therefore be denied

13 insofar as Plaintiff's fourth claim seeks injunctive relief.

14    D. Payment of Costs

15    Defendants ask the Court to dismiss Plaintiff's complaint, or,

16 in the alternative, to stay the case, based on Plaintiff's failure

17 to pay Defendants' costs in Laquerre, Jowel, v. Nevada System of

18 Higher Education, case number c:10-cv-00232-LRH-VPC, an earlier

19 state court action that was removed to this District.  In this prior

20 case, United States District Judge Larry R. Hicks dismissed the same

21 complaint filed in this action without prejudice for lack of proper

22 service, and the court awarded costs to Defendants. (Case 3:10-cv-

23 00232-LRH-VPC #10.)  Plaintiff asserts that Defendants have not

24 sought a writ of execution or taken any steps to act on collecting

25 on the cost judgment. (Resp. to MTD at 5 (#19).)  Where Defendants

26 have not taken any steps to collect on a cost judgment, the Court

27 will not step in to act as their collection agent.  We therefore

28                                  13

1 decline to dismiss Plaintiff's complaint or to stay the case based
2 on Plaintiff's failure to pay Defendants' costs in the prior action.
3
4 **IV. Conclusion**
5        Plaintiff's first and second claims for breach of contract do
6 not survive the present motion to dismiss because Plaintiff does not
7 allege facts sufficient to permit the inference that a contract
8 existed.  Plaintiff's fourth claim alleging First Amendment
9 retaliation survives the present motion to dismiss to the extent it
10 seeks injunctive relief, as we have found that Defendant Sheehan is
11 entitled to qualified immunity.  Finally, we decline to dismiss
12 Plaintiff's complaint or to stay the case based on Plaintiff's
13 failure to pay Defendants' costs in the prior action.
14
15        **IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' motion to
16 dismiss (#18) is **GRANTED** in part and **DENIED** in part on the following
17 basis: Plaintiff's first and second claims are dismissed.
18 Plaintiff's fourth claim survives this motion to dismiss to the
19 extent that it seeks injunctive relief.  We decline to dismiss
20 Plaintiff's complaint or to stay the case based on Plaintiff's
21 failure to pay Defendants' costs in the prior action.
22
23 DATED: August 5, 2011.

_Edward C. Reed._
UNITED STATES DISTRICT JUDGE

24
25
26
27
28                                    14